IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERTA LAJEAN THOMPSON,

    Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

    Defendant.

CIVIL ACTION
NO. 15-3506

## OPINION

**Slomsky, J.**     July 13, 2017

### I. INTRODUCTION

Before the Court is Plaintiff Roberta Lajean Thompson's Objections to United States Magistrate Judge David R. Strawbridge's Report and Recommendation. (Doc. No. 19.) Plaintiff filed a counseled Complaint seeking review of her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the "Act"). (Doc. No. 3 at 1.) On January 8, 2016, the Court referred this matter to Magistrate Judge Strawbridge for a Report and Recommendation. (Doc. No. 17.) On March 1, 2017, Magistrate Judge Strawbridge filed a Report and Recommendation finding that Plaintiff's request for review of her disability claims should be denied and that the decision of the Commissioner be affirmed. (Doc.

---

[1] Nancy A. Berryhill is the acting Commissioner of the Social Security Administration. Pursuant to Rule 24(d) of the Federal Rules of Civil Procedure, Berryhill replaces Carolyn W. Colvin as Defendant in this case and no further action is needed to meet the requirement of the final sentence of 42 U.S.C. § 405(g) which states:

> Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.

No. 18.) On March 15, 2017, Plaintiff filed timely Objections to the Report and Recommendation. (Doc. No. 19.) On March 24, 2017, Defendant filed a Response. (Doc. No. 21.) Plaintiff's Objections are now ripe for review and the Court will decide whether to adopt the Report and Recommendation (Doc. No. 18) approving the Commissioner's denial of funds for Plaintiff.

## II.     BACKGROUND

### A.  Factual and Procedural History

In the Report and Recommendation, Magistrate Judge Strawbridge summarized the relevant facts of the case as follows:

> Thompson filed the SSI application giving rise to this appeal on February 22, 2012, less than a year after filing an earlier SSI claim that she did not pursue further after it was denied in December 2011. She was fifty one years old, with a tenth grade education, and had a sporadic work history of short-term job[s]. She last worked, in a housecleaning position, on August 31, 2010, when her employer determined that "[her] services were no longer needed." After the state agency denied her 2012 claim, Thompson requested a hearing, which was held before an ALJ [Administrative Law Judge] on September 26, 2013. Thompson appeared with counsel and both she and a vocational expert ("VE") testified.
>
> Thompson has been diagnosed with hepatitis C[;] with cirrhosis and anemia; obstructive sleep apnea; asthma; a disorder of the left arm from two fractures requiring the installation of surgical hardware; major depressive disorder; panic disorder with agoraphobia;[2] and substance abuse. She acknowledged at the

---

[2] Agoraphobia usually involves a fear of being caught in a place where "escape" would not be easy, or would be embarrassing. Mary Rudy and Andrea Barilla, Panic Disorder with Agoraphobia, Healthline, (Feb. 26, 2016), http://www.healthline.com/health/panic-disorder-with-agoraphobia#overview. The Anxiety and Depression Association of America states that people with Agoraphobia:

> Stop going into situations or places in which they have previously had a panic attack in anticipation of it happening again.
>
> [T]hey typically avoid public places where they feel immediate escape might be difficult, such as shopping malls, public transportation, or large sports arenas. About one in three people with panic disorder develops agoraphobia. Their world may become smaller as they are constantly on guard, waiting for the next

hearing that she had been a near-daily user of crack cocaine for many years. She was unable to recall in many cases what account she had given to various Social Security personnel and examiners in 2011 and early 2012 concerning her drug and alcohol use in that it "was so long ago" and she "was always stoned, always[.]" She stopped using cocaine and alcohol on August 30, 2012 and, after a brief relapse, started a new period of sobriety on September 17, 2012 that was still ongoing as of the hearing on September 23, 2013, a full year later.

At the hearing, both the ALJ and counsel attempted to elicit from Thompson how her functioning had changed since she stopped abusing drugs and alcohol. These inquiries often led to confusing responses. Thompson reported, for example, that she had ceased smoking crack on a daily basis and had even recently cut down significantly on her cigarette smoking, but at the same time described her breathing as "worse than I was before." After initially stating that her feelings of paranoia worsened after she stopped using drugs, she eventually clarified that her paranoia had improved.

Thompson also testified about how depression has affected her since she became sober: that she only wants to keep to herself and that when she is around other people she feels "annoyed" and starts shaking, as she apparently was doing during the hearing. She also testified that she began Interferon injection therapy for hepatitis in March 2013 and tended to be extremely fatigued for the first two days of the weekly treatment cycle. In addition, she described a constant state of pain and throbbing in her left arm from an incident she was involved in three years earlier that required reconstructive surgery and hardware implants. She indicated that her fingers would cramp up after a period of time and she would have to pull them apart. She stated that she could not [do] anything for too long in her left hand but acknowledged that she was right-handed and was not limited in what she could do with that hand. She testified that she tries to get up and do housework but she "get[s] frustrated," so family members help her with her chores. In other submissions or medical examinations, however, she sometimes offered contradictory responses. As the ALJ noted, for example, Thompson indicated in her March 2012 function report that she washed dishes, completed her laundry, and assisted with other household chores, and reported in a May 2013 examination that she was independent in her activities of daily living. He also observed her testimony that she attended her medical and therapy appointments throughout the week and used public transportation independently. In addition,

---

panic attack. Some people develop a fixed route or territory, and it may become impossible for them to travel beyond their safety zones without suffering severe anxiety.

Understand the Facts: Panic Disorder and Agoraphobia, Anxiety and Depression Association of America (2010-2016), http://www.adaa.org/understanding-anxiety/panic-disorder-agoraphobia.

while she did not spend time with others, she stated at the hearing that she enjoys attending her support groups and strives to be around "positive people."

The record before the ALJ included documentation of her treatment with psychiatrists and therapists at Penn Behavioral Health. Thompson was first evaluated on July 12, 2012 upon referral by her liver doctor. She underwent another psychiatric evaluation there on January 28, 2012, when she had been sober for four months. She described to the psychiatrist at that time that she had struggled with suicidal ideation and hallucinations while using cocaine and alcohol, and described engaging in a harmful act to a friend while under the influence. She attributed that behavior, however, to the cocaine use. She noted that since she had become sober she did not feel the need to take Prozac for anxiety, as she had done intermittently before. She reported that she had "gone through the shakes" in the past when she tried to self-taper alcohol. The psychiatrist noted that her history of mood disorder was "most likely substance induced vs. MDD [Major Depressive Disorder] [induced]."

The record also contained reports of three consultative examinations that Thompson underwent when her application was pending with the state agency. The first two related to her earlier SSI application, in that they took place in July and November 2011. Those evaluations, by Mosen Alavi, M.D. and Leonard Popowich, D.O., focused on her physical condition due to her left arm impairment, history of hypertension, and asthma, and also included assessments by the physicians concerning her physical functional capacity. As part of the evaluation by the state agency with regard to her February 2012 application, she underwent a psychological evaluation on May 10, 2012. Rebecca Canna, Psy.D., prepared a narrative report and opined on the type and degree of limitations that Thompson had suffered as a result of mental impairments. While Thompson reported to Drs. Alavi and Popowich in 2011 that she drank occasionally and had previously used cocaine, she did not report any history of cocaine abuse to Dr. Canna at her May 2012 evaluation. Rather she reported that she drank daily, sometimes quite heavily, but that she had not had a drink in three weeks. Thompson later testified at her hearing that she did not begin a sustained period of recovery from either cocaine or alcohol until September 2012. Dr. Canna rated her as having "marked" restrictions in various categories of social functioning but no more than "slight" restrictions in her abilities to understand, remember, and carry out instructions.

A final piece of medical opinion evidence is reflected in the state agency disability determination explanation, Exhibit 1A, which contains the assessment of state agency reviewing psychologist Karen Weitzner, Ph.D. on June 29, 2012, based upon the various records on file at that point, including the consultative report and opinion of Dr. Canna. Dr. Weitzner opined that Thompson's degree of limitations was "moderate" as to the ability to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to maintain socially appropriate

4

behavior and to adhere to basic standards of neatness and cleanliness; and to respond appropriately to changes in the work setting. She did not agree with Dr. Canna that any of Thompson's restrictions in social functioning reached the "marked" level. Dr. Weitzner explained how she reached her opinion:

> Claimant is diagnosed with Major Depressive Disorder and Alcohol Dependence, r/o Cocaine Abuse. Claimant is prescribed psychotropic medication by her physician. She has been inconsistent in participating in any recommended treatment. Claimant reports a past history of suicidality though not in several years. She drinks alcohol almost daily and reports periodic cocaine use as well. Claimant can care for hygiene and daily chores within her household. She reports she is supported by family. She is reluctant to go out in public but does take public transportation independently and is able to shop for food and personal items. Claimant has limited memory but her overall cognitive functioning is intact. Claimant is guarded around others and would work best away from the public. Claimant's allegations are partially credible. The MSO [medical source opinion] by Dr. Canna was considered and is partially consistent with the current assessment. Claimant is capable of simple, routine work.

The ALJ concluded that Thompson could not perform her past work. As we discuss in greater detail below, however, he determined that she retained the capacity for unskilled work at the light exertional level with certain environmental, postural, and psychological caveats. Accordingly, he concluded that Thompson was not disabled. The Appeals Council declined Plaintiff's request for review, rendering the ALJ's January 29, 2014 decision the final decision of the Commissioner.

(Doc. No. 18 at 2-9. (internal footnotes, citations, and emphasis omitted).) On February 28, 2017, Magistrate Judge Strawbridge denied Plaintiff's request for review. The Court will now review Plaintiff's claims de novo.

### B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of

proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If the claimant does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, she is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairments(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

Id. at § 404.1520(a)(4)(i)-(v).

### III. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's

decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla [of evidence] . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d. Cir. 2003). Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as his finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate," not "a mere scintilla." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d. Cir. 1999)).

## IV. DISCUSSION

In her Objections, Plaintiff argues that Magistrate Judge Strawbridge erred by not accepting the arguments made in her initial brief. (Doc. No. 21 at 1.) Plaintiff argues that Magistrate Judge Strawbridge erred for two reasons in recommending that the Administrate Law Judge's ("ALJ") decision be affirmed and adopted in its entirety. (Doc. No. 19 at 2, 8.) First, Plaintiff contends that Magistrate Judge Strawbridge erred by affirming the ALJ's decision because the ALJ erred in giving "little weight" to Dr. Canna's opinion and by "cherry-picking

from mixed evidence to support a denial of benefits." (Id. at 2, 4.) Second, Plaintiff argues that Magistrate Judge Strawbridge erred by agreeing with the ALJ's decision to omit the limitations assessed by Dr. Popowich in his Residual Functional Capacity ("RFC") finding. (Id. at 7.) Plaintiff's two Objections mirror her arguments made while Magistrate Judge Strawbridge was deciding the Report and Recommendation. The Court will discuss each argument in turn.

> **1. Magistrate Judge Strawbridge Correctly Found that the ALJ's Decision to Reject Dr. Canna's Opinion was Proper and Supported by Substantial Evidence**

Plaintiff contends that the ALJ rejected Dr. Canna's opinion "for erroneous reasons" and therefore his decision should be reversed. (Id. at 7.) Plaintiff claims that the ALJ's decision was based on his "selective citation of the record." (Id. at 3.)

Here, Magistrate Judge Strawbridge accepted the ALJ's finding that Dr. Canna's opinion was given "little weight" because:

> Dr. Canna was misinformed, by Thompson, about the ongoing nature of her drinking at that time and the fact that she was also then actively abusing cocaine. She [Dr. Canna] did not have the benefit of any of Thompson's other medical records or statements. She necessarily based her opinion on what Thompson told her in the examination and her observations of how Thompson presented.

(Doc. No. 18 at 16.) An ALJ may decide to discredit a treating physician's opinion when it is contradicted by other competent medical evidence of record. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In Morrison v. Barnhart, the United States Court of Appeals for the Third Circuit found that:

> The mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted.

78 F. App'x. 820, 824-25 (3d Cir. 2003). The ALJ gave Dr. Canna's opinion little weight because "the objective evidence of record [did] not support the claimant's allegations of [an]

8

inability to engage in sustained work activity." (Doc. No. 18 at 14.) The ALJ found that Dr. Canna's opinion was based on Plaintiff's own allegations, and as such was inconsistent with objective clinical findings of record. (Id. at 14-15.) The ALJ noted that "while he found Thompson credible regarding her drug use and sobriety, he believed she overstated her functional limitations." (Id. at 14.) Additionally, the ALJ found that Plaintiff's benefits should be denied because:

> In Plaintiff's May 2012 consultative examination, Plaintiff presented as alert and oriented to person, place, time, and situation, with calm behavior, and speech within normal limits. Although the [P]laintiff's mood was described as anxious, depressed and tearful at times throughout the examination, her thought processes were logical, goal-directed and within normal limits. Most recently, Plaintiff firmly denied any hallucinations or suicidal and homicidal ideations.

(Id.)

Moreover, the ALJ explained how he reconciled the conflicting medical opinions that were offered. The ALJ stated that he gave more weight to the opinions of the state agency medical consultants because they were largely consistent with the objective medical evidence of record and the residual functional capacity finding. (Id. at 15.) These statements demonstrate that the ALJ considered the opinion of Dr. Canna but found inconsistencies with the objective clinical findings of record because Plaintiff was actively drinking and abusing cocaine at the time of Dr. Canna's evaluation: Plaintiff indicated in the Function Report Questionnaire from March 17, 2012 that she had "no problems" getting along with others, and she did not select "completing tasks," "concentration," "understanding," or "following instructions" as areas affected by her conditions. Moreover, Dr. Canna described Plaintiff's restriction as "marked" in all areas of social functioning. Dr. Canna did not indicate how she reconciled her findings with the other clinical evidence of record including that Plaintiff:

9

> Arrived at the appointment on-time, was well-groomed and appropriately dressed, was cooperative with the evaluator, related appropriately to the evaluator, and that she reported that she gets along with her family, who help her with household tasks.

(Doc. No. 18 at 16-17.) Here, Plaintiff's active drug and alcohol use, incoherent questionnaire responses, and social functioning scores suggest that Dr. Canna's evaluation may have been skewed. The record reflects substantial evidence to support the denial of benefits in this case.

For these reasons, the Court agrees with Magistrate Judge Strawbridge's finding that the ALJ properly found Dr. Canna's opinion to warrant little weight in light of Plaintiff's statements to the state agency. (Id. at 17.) As a result, Plaintiff's first Objection will be denied.

**2. Magistrate Judge Strawbridge Correctly Found that the ALJ's Decision to Omit Some of the Limitations Assessed by Dr. Popowich was Proper and Supported by Substantial Evidence**

Next, Plaintiff claims that the ALJ erred by failing to include the limitations assessed by Dr. Popowich in his RFC finding. (Doc. No. 19 at 7.) Dr. Popowich evaluated Plaintiff in November 2011, when she was eleven months post-surgery for her forearm fracture. (Doc. No. 18 at 22.) Dr. Popowich found Plaintiff to have marked limitations in the areas of handling, fingering, feeling, and reaching (other than overhead reaching). (Id. at 22.) Dr. Popowich found that the x-ray reports from this time indicated that the fracture was still healing. (Id.) Six months later, Dr. Balogh examined Plaintiff's forearm. Dr. Balogh was the reviewing physician when Plaintiff's SSI application was ripe for initial determination. (Id. at 22.) He found that Plaintiff's ability to engage in pushing and pulling, including operation of hand controls, was unlimited, except for lifting and carrying. (Id. at 21.)

The ALJ's RFC finding includes Plaintiff's physical limitations regarding pushing and pulling, as well as overhead reaching with her left arm. The report, however, did not reflect all of the limitations that Dr. Popowich believed Plaintiff was subject to at the time of his

examination in November 2011. (Id.) The ALJ only accepted part of Dr. Popowich's opinion. The ALJ found that between February 2012 and January 2014, the objective medical evidence of record reflected no complaints of difficulty with handling, fingering, feeling, or reaching; no treatment and no complaints at the hearing of functional limitations other than of cramping of fingers over time. (Id. at 22.)

The Third Circuit has stated that an ALJ is not expected to discuss or make reference to every piece of relevant evidence included in the record so long as he or she considers and evaluates the medical evidence in the record. See Fargnoli v. Halter, 247 F.3d 34, 42 (3d Cir. 2001); Soto v. Barnhart, No. 04-1588, 2005 WL 1367783, at *2 (E.D. Pa. Jun. 6, 2005). The record reflects that the ALJ considered Dr. Popowich's and Dr. Balogh's report and used it in his findings. (Doc. No. 18 at 21.) Therefore,
the ALJ was entitled to omit from his residual functional capacity finding any mention of the marked limitations in handling, fingering, feeling, or reaching other than overhead because overwhelming evidence in the record discounted its probative value rendering it irrelevant. Johnson v. Comm'r Soc. Sec., 529 F.3d 198, 205 (3d Cir. 2008).

For this reason, this Court agrees with Magistrate Judge Strawbridge's determination that the ALJ adequately explained the evidentiary basis for his findings. The ALJ's reconciliation of the differing opinions of the consultative examiner from November 2011, Dr. Popowich, and the state agency reviewing physician from May 2012, Dr. Balogh, is supported by substantial evidence. (Doc. No. 18 at 23.) As a result, Plaintiff's second Objection will be denied.

## V. CONCLUSION

For these reasons, Plaintiff's Objections to the Report and Recommendation filed by Magistrate Judge Strawbridge will be denied. (Doc. No. 19.) The Report and Recommendation (Doc. No. 18) will be approved and adopted. An appropriate Order follows.